UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND DIMEO,

    Plaintiff,

                                CASE NO. 08-10241
v.                                  HON. LAWRENCE P. ZATKOFF

DETECTIVE MARK BERGER,
D/SGT. BRIAN KOSLOWSKI,
DETECTIVE LUCAS BALCH,
DETECTIVE FRANK VENTIMIGLIO,
DETECTIVE RONALD LEHMAN, and
OFFICER JOSHUA LEWIS,

    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 25, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter comes before the Court on Defendant Ronald Lehman's motion for summary judgment [dkt 27], Defendant Lucas Balch's motion for summary judgment [dkt 29], and Defendants Brian Kozlowski and Frank Ventimiglio's motion for summary judgment [dkt 30]. The parties have fully briefed each motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, the Court GRANTS each of Defendants' motions for summary judgment.

## II.  BACKGROUND

In January 2005, an individual named Brian Carrow informed Defendant Detective Mark Berger, a member of the County of Macomb Enforcement Team, that Plaintiff routinely obtained two to three pounds of marijuana, which he sold from his home.  Carrow had been arrested for breaking into Plaintiff's home.  Berger conducted two visits to Plaintiff's house for the purpose of conducting "trash pulls."  Berger inspected Plaintiff's curbside trash in which he found suspected marijuana stems and seeds.  Test results later confirmed the presence of marijuana.  Berger also verified that Plaintiff resided at the house by locating discarded mail that bore his name and address.

On January 20, 2005, Berger procured a warrant to search Plaintiff's home for the presence of drugs.  That night, Defendant Sergeant Kozlowski held a ten-minute briefing prior to the execution of the warrant.  All Defendants were present.[1]  After the briefing, Defendants arrived at Plaintiff's house shortly before 10:00 pm to execute the warrant.  Defendants were attired in black fatigue cargo pants and black raid vests to which their badges were secured.  Defendants knocked and announced their presence.  Plaintiff, who suffers from Hepatitis C, had administered his medication around 9:30 pm and had fallen asleep.  When Plaintiff did not respond, Defendant Officer Ventimiglio utilized a battering ram to gain access into the residence.  Plaintiff ignored the first two "booms" of the ram against the door.  On the third boom, Plaintiff emerged from his bedroom to investigate the situation.  Plaintiff did not turn on any lights nor could he see what was occurring through his windows because he had installed thick polycarbon plastic sheets over all of his windows after Carrow had broken into his house.  Plaintiff could only see general movement on his porch and concluded that more than one person was present.  The door gave way when struck

---

[1] Defendant Officer Lewis was not present, but he has been dismissed from this case.

the fifth time.

Defendants entered Plaintiff's home in the following order: (1) Kozlowski, (2) Balch, (3) Lehman, (4) Berger, (5) Ventimiglio, and (6) Lewis. Upon entry, the house was completely dark with the exception of Kozlowski's flashlight. As Defendants moved into the home, they became entangled in a curtain that separated the foyer from the remainder of the home. According to Plaintiff, the curtain prevented heat from escaping through the front door during the winter months.

At this point, the parties differ in their presentation of the facts. Because this matter comes before the Court on Defendants' respective motions for summary judgment, the Court construes the facts in the light most favorable to Plaintiff as the non-moving party. Plaintiff maintains that he "froze" when Defendants breached his door. He did not realize that they were police; he simply saw "dark figures coming at him." Plaintiff contends that Defendants did not speak as they approached him. In his deposition, Plaintiff indicated that he reached for the keypad of his alarm system and may have taken a step in the direction of Defendants. Plaintiff then felt a blow to the side of his head—possibly from a flashlight or a nightstick—followed by three others in rapid succession. Plaintiff fell to the floor, hit his head on the edge of a table from which a screw protruded, and lost consciousness momentarily. Plaintiff believes that Defendants used pepper spray. At some point during the physical altercation, Plaintiff defecated in his pants. Although Plaintiff resisted, Defendants ultimately succeeded in handcuffing him. When Defendants illuminated the room, Plaintiff realized that Defendants were police officers.

Defendants permitted Plaintiff to shower before sending him to Mt. Clemens General Hospital where he was treated for a minor head injury, fractured nose, hyphema, lacerations, contusions, and scrapes. Plaintiff received a Vicodin prescription for pain management.

Meanwhile, Defendants searched Plaintiff's house, finding a small amount of marijuana and trace amounts of cocaine. Defendants also discovered a scale, grinder, $650, and Ziploc bags.

Plaintiff was charged with possession of marijuana, possession of cocaine, and resisting a police officer. He pleaded *nolo contendre* to each charge and received a sentence of probation for one year and eleven months. In conjunction with his pleading, Plaintiff stipulated to the facts in the police report. Plaintiff now brings this action, alleging that "[t]he excessive application of force to Plaintiff's person constitutes an excessive application of force in violation of the Fourth and Fourteenth Amendments of the United States Constitution."

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

With respect to excessive-force claims, once all relevant facts are established and all inferences are made in favor of the nonmoving party, "the reasonableness of [a defendant's] actions . . . is a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007).

### IV. ANALYSIS

Plaintiff claims that he "froze" when Defendants broke down his door. According to Plaintiff, Defendants used excessive force when they struck him in the head four times, used pepper spray, and violently wrestled him to the ground, causing him to bleed excessively and defecate in his pants. Plaintiff also points to circumstantial evidence in the form of a closed-circuit surveillance camera that was removed from his residence after his home was raided.

Defendants respond that Plaintiff was running at them with arms flailing when they entered his residence and that the force used was reasonable under the circumstances. Defendants note that Plaintiff cannot articulate which individual or individuals struck him. Defendants also argue that Plaintiff has previously stipulated to the police report, which states that Plaintiff was resisting arrest. Finally, Defendants contend that they enjoy qualified immunity.

The Fourth Amendment protects individuals from excessive force by law-enforcement personnel. *Watkins v. City of Southfield*, 221 F.3d 882, 887 (6th Cir. 2000). The Court reviews claims of excessive force under a standard of reasonableness. *Saucier v. Katz*, 533 U.S. 194, 209 (2001). The Court accordingly views the use of force from the perspective of a reasonable law-enforcement officer on the scene rather than retrospectively. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The analysis is to be conducted under the totality of the circumstances and without regard to intentions or motivations. *Id.* The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Court's analysis must "embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

When resolving issues of excessive force, the Court must "carefully balance the nature of the intrusion on the [individual's] Fourth Amendment rights against 'the countervailing governmental interests at stake.'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Whether law-enforcement officials employed the least forceful alternative is not determinative in excessive-force claims. *See, e.g.*, *Harrell v. Purcell*, 236 F. Supp. 2d 526, 532 (M.D.N.C. 2002). Accordingly, "not every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *Burchett v. Kiefer*, 310 F. 3d 937, 944 (6th Cir. 2002). A finding that an individual was resisting arrest does not preclude a finding of excessive force. *Lockett v. Suardini*, 526 F.3d 866, 873 (6th Cir. 2008).

In support of his claim, Plaintiff cites to *Vance v. Wade*, 546 F.3d 774 (6th Cir. 2008). In that case, the court determined that the plaintiff had alleged a potential instance of excessive force when the defendant was accused of "pulling up on [Vance's] handcuffs while his hands were cuffed behind his back, . . . shoving [Vance's] head and shoulder downward and essentially throwing [Vance] into the floorboard, and . . . closing the car door to force [Vance's] legs into the car." *Id.* at 783–84. In the case now before the Court, Plaintiff contends that he "was subjected to much worse [than the plaintiff in *Vance*] under his version of the facts." In *Vance*, however, the plaintiff had already been restrained and therefore posed much less of a risk to the defendant. The court took

note of the vulnerable nature of the plaintiff: "The problem, however, is that Vance alleged that Wade used this force well *after* securing Vance and defusing the situation." *Id.* at 785 (emphasis in original).

The Court finds that Plaintiff's situation is utterly distinct from *Vance*. Defendants in this matter arrived at Plaintiff's residence to effectuate a search warrant for drugs. They announced their presence but received no answer. Upon gaining entry into Plaintiff's home, Defendants encountered an opaque curtain in which they were tangled because the house was entirely dark. After navigating the curtain, Defendants saw Plaintiff, whose presence was undoubtedly a surprise after he failed to respond when they first announced their presence. Plaintiff indicated that he may have been reaching for his alarm keypad with an outstretched hand and could not eliminate the possibility that he took a step toward Defendants. Given the bizarre circumstances of entry, the darkness of the home, and posture of Plaintiff, it was objectively reasonable for Defendants to believe he posed a threat. Defendants only struck Plaintiff until he fell to the ground, and Plaintiff's most serious injury was caused by a collision with a table, which Defendants would not have been able to see in the darkness. Plaintiff does not allege that he was beaten while on the ground and admits that he was resisting Defendants' efforts to handcuff him.

It is unfortunate that Plaintiff suffered injuries in conjunction with his arrest. The Court, however, does not evaluate the reasonableness of Defendants' actions with the clarity of hindsight. Rather, the Court considers the circumstances surrounding their actions at the time Defendants conducted them. Under the totality of the circumstances, the Court finds that Defendants acted reasonably. Accordingly, the Court dismisses Plaintiff's complaint against Defendants.

## V. CONCLUSION


For the reasons set forth above, the Court GRANTS Defendant Ronald Lehman's motion for summary judgment [dkt 27], Defendant Lucas Balch's motion for summary judgment [dkt 29], and Defendants Brian Kozlowski and Frank Ventimiglio's motion for summary judgment [dkt 30].

                                         S/Lawrence P. Zatkoff
                                         LAWRENCE P. ZATKOFF
                                         UNITED STATES DISTRICT JUDGE

Dated:  June 25, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 25, 2009.

                                         S/Marie E. Verlinde
                                         Case Manager
                                         (810) 984-3290